

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| CHAD NICHOLAS AYLER, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD76742 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | August 19, 2014 |
| DIRECTOR OF REVENUE, STATE OF | ) | |
| MISSOURI, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Johnson County, Missouri**
**The Honorable W. Sue Dodson, Judge**

**Before Special Division:**  Mark D. Pfeiffer, Presiding Judge,
Gary D. Witt, Judge, and Zel M. Fischer, Special Judge

The Director of Revenue of the State of Missouri ("Director") appeals from the judgment

of the Circuit Court of Johnson County, Missouri ("trial court"), arguing that the trial court erred

in ordering the Director to set aside the administrative revocation of Chad Nicholas Ayler's

("Ayler") driving privileges based on his refusal to submit to a chemical test pursuant to section

577.041.[1]  The Director asserts that the trial court erroneously concluded that the arresting officer

---

[1] Unless otherwise indicated, all statutory references are to the 2012 Cumulative Supplement of the Revised
Statutes of Missouri.

lacked reasonable grounds to believe Ayler was driving a motor vehicle while in an intoxicated condition. We affirm.

## Factual and Procedural History[2]

At approximately 2:12 a.m. on January 4, 2013, Missouri State Highway Patrol Trooper J.D. Owens ("the Trooper") was advised of a one-vehicle wreck at 843 S.W. 1601 Road in Johnson County, Missouri, where the road conditions were ice-covered. While responding to the wreck, he was advised that Johnson County deputies had arrived at the scene. When the Trooper arrived, he observed the vehicle lying on its roof in a ditch. Two men were standing on the side of the roadway surrounded by firefighters. The Trooper spoke with both men, who admitted to being passengers in the vehicle at the time of the crash. Both advised the Trooper that Ayler was the driver. One of the passengers was Ayler's younger brother, Jacob Ayler ("Jacob").[3] Jacob provided the only evidence regarding the time of the accident, which Jacob estimated to be sometime between 11:50 p.m. and 12:25 a.m.

The trial court's judgment is silent on the topic of Ayler's alcohol consumption *prior* to the wreck and neither party demanded findings of fact and conclusions of law. Demonstrating the equivocal nature of the evidence on this topic, the Director's appellate brief states:

> [Jacob] testified that [Ayler] *had at least one beer before the crash.* (Tr. 11, 13, 14, 20-21). He further admitted that he told one of the officers that [Ayler] had one or two beers, and one of the officers that [Ayler] had two or three beers. (Tr. 20-21; L.F. 19).[4]

What the trial court found significant in its judgment, however, was the *timing* of when any beer may have been consumed, particularly in light of the fact that there was a gap of potentially more

---

[2] We view the evidence in the light most favorable to the trial court's judgment. *White v. Dir. of Revenue*, 321 S.W.3d 298, 302 (Mo. banc 2010).

[3] Because appellant Chad Ayler and Jacob Ayler have the same surname, we refer to Jacob Ayler by his first name to avoid confusion. No familiarity or disrespect is intended.

[4] The Trooper's alcohol influence report narrative reflected that Ayler had consumed "three or four beers," adding yet another possible version of events.

than two hours between the time of the wreck and the Trooper's initial contact with Ayler. The only unequivocal and undisputed evidence about Ayler's alcohol consumption *prior* to the wreck was Jacob's testimony that Ayler "had one [beer] from Casey's [where the beer and pizza was purchased] to the wreck [which occurred 20 to 25 minutes later]." He also characterized Ayler's ability to drive as "perfect."

The Trooper's initial contact with Ayler was at 2:42 a.m. Ayler refused to speak with the Trooper and refused to take a preliminary breath test. The trial court's judgment summarized the Trooper's observations as follows:

> Upon making contact with [Ayler], Trooper Owens immediately smelled a strong odor of alcoholic beverage. Trooper Owens also observed [Ayler's] eyes as being watery, bloodshot and slightly drooping. [Ayler's] face was flushed. Trooper Owens described [Ayler's] speech as seeming to be slurred and mumbled.

No field sobriety tests were administered to Ayler. At 3:08 a.m., the Trooper arrested Ayler for driving while intoxicated ("DWI"), § 577.010, and requested that Ayler submit to a chemical test of his breath to determine the alcohol content of his blood. Ayler refused. Thereafter, the Director revoked Ayler's driving privileges pursuant to section 577.041.

Ayler petitioned for a trial *de novo*, pursuant to section 577.041.4, for review of whether the Trooper had probable cause to believe Ayler was driving a motor vehicle in an intoxicated condition. The Director's case was submitted on a certified copy of the records of the Department of Revenue, which included Ayler's Missouri Driver Record, the Alcohol Influence Report, the arresting officer's Alcohol Influence Report Narrative, and a copy of the Missouri State Highway Patrol uniform citation issued to Ayler for DWI. Jacob testified as the only witness on behalf of Ayler.

3

On July 10, 2013, the trial court issued its judgment setting aside the revocation of Ayler's driving privileges and ordering the reinstatement of Ayler's driving privileges. In its judgment, the trial court stated, in pertinent part:

11. [The Director] has both the burden of proof and the burden of persuasion before this Court. "Reasonable grounds" is synonymous with "Probable Cause". Probable cause must exist at the time of the arrest. An officer cannot boot strap facts learned after the arrest to establish probable cause for the arrest.

12. Upon coming into contact with [Ayler], Trooper Owens formed an opinion as to [Ayler's] condition *at that time* and concluded [Ayler] was intoxicated.

13. Based upon the credible evidence, Trooper Owens, at the time of [Ayler's] arrest, could not have known what [Ayler's] condition was at the time of the accident. As a result, Trooper Owens lacked reasonable grounds to believe that [Ayler] was driving a motor vehicle while in an intoxicated condition.

14. Based upon the credible evidence, [the Director] has failed in both its burden of proof and burden of persuasion.

The Director timely appeals.

## Standard of Review

We review an appeal from a trial court's judgment in a driver's license revocation case according to the standard in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010).[5] The trial court's judgment is affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* (citing *Murphy*, 536 S.W.2d at 32).

## Statutory Background

Under Missouri's "implied consent" law:

---

[5] *White* was a section 302.535 case. However, section 302.535 cases discussing issues related to standard of review, probable cause, and the deference given to implicit and explicit factual findings may be cited interchangeably with section 577.041 cases. *White*, 321 S.W.3d at 305 n.6.

> Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to . . . a chemical test . . . for the purpose of determining the alcohol . . . content of the person's blood . . . [i]f the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated . . . condition[.]

§ 577.020.1(1). If the arrested person refuses the officer's request to submit to a chemical test, that person's driver's license will be revoked for a period of one year. §§ 577.041.1, 577.041.3. A person whose license has been so revoked may petition for a hearing before the circuit court and seek to have the revocation set aside. § 577.041.4. At the trial *de novo*, the trial court is to determine only:

> (1) Whether or not the person was arrested or stopped;
>
> (2) Whether or not the officer had [r]easonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; [and]
>
> . . . .
>
> (3) Whether or not the person refused to submit to the test.

§ 577.041.4. The Director has the burden of proving all three elements by a preponderance of the evidence. *Hill v. Dir. of Revenue*, 424 S.W.3d 495, 499 (Mo. App. W.D. 2014). "If the court determines any issue not to be in the affirmative, the court shall order the director to reinstate the license or permit to drive." § 577.041.5.

**Applicable Legal Principles**

There is no dispute that Ayler was arrested for DWI and that he refused to submit to a chemical test. Ayler only challenged the second element—whether the arresting officer had reasonable grounds to believe that Ayler was driving a motor vehicle while in an intoxicated condition. *See* § 577.041.4(2)(a).

"Reasonable grounds" in a refusal case "is virtually synonymous with probable cause." *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002) (internal quotation omitted). "Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." *Id.* at 621 (internal quotation omitted). "In determining whether there were reasonable grounds to arrest a driver for DWI, the trial court must evaluate the situation from the viewpoint of a cautious, trained, and prudent police officer at the time of the arrest." *Flaiz v. Dir. of Revenue*, 182 S.W.3d 244, 248 (Mo. App. W.D. 2005). There is no precise test for determining whether probable cause exists; rather, that determination is based on the particular facts and circumstances of each individual case. *Id.* At issue in a refusal case is whether the officer had reasonable grounds to believe the driver was intoxicated, not whether the driver actually was intoxicated. *Id.* The level of proof necessary to establish probable cause is substantially less than that required to prove guilt beyond a reasonable doubt. *White*, 321 S.W.3d at 309.

At the trial *de novo*, the State (represented by the Director) has the burden of proof to adduce evidence. § 302.535.1. "The [D]irector's burden of proof has two components—the burden of production and the burden of persuasion." *White*, 321 S.W.3d at 304 (footnote omitted). To satisfy the burden of production, the Director must introduce enough evidence on an issue to have the issue decided by the trial court, rather than decided against the Director in a peremptory ruling. *Id.* To satisfy the burden of persuasion, the Director must convince the trial court to view the facts in a way that favors the Director. *Id.* at 305. When evidence is contested by disputing a fact in any manner, we defer to the trial court's determination of credibility. *Id.* at 308. The trial court is free to believe or disbelieve any or all of the contested evidence at trial. *Id.* at 312. "If the trier of fact does not believe the evidence of the party bearing the burden, it

properly can find for the other party." *Id.* at 305. "[T]he party not having the burden of proof on an issue need not offer any evidence concerning it." *Id.* (internal quotation omitted).

We review the trial court's probable cause determination in a two-step analysis. *Warren v. Dir. of Revenue*, 416 S.W.3d 335, 340 (Mo. App. S.D. 2013). First, when evidence is contested by disputing a fact in any manner, we defer to the trial court on factual issues, including the inferences the trial court made from the historical facts. *White*, 321 S.W.3d at 308, 310. Our standard of review is abuse of discretion. *Id.* Second, we determine whether these historical facts satisfy the relevant statutory standard. *Id.* Our standard of review with regard to applying the historical facts to the statutory standard relating to probable cause is *de novo*. *Id.* We will reverse the trial court's judgment only if it is clearly erroneous. *Id*. "[I]f the trial court's ruling is plausible in light of the record viewed in its entirety, [we] may not reverse it even though [we are] convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently." *Id.* at 311 (internal quotation omitted).

**Analysis**

The Director has asserted one point on appeal, which states:

> The judgment was unsupported by any evidence and the trial court erred as a matter of law in holding that the arresting officer lacked reasonable grounds to believe the driver was driving while intoxicated, because, in a section 577.041 chemical refusal case, the Director is only required to show the arresting officer had reasonable grounds to believe the person was driving while intoxicated under section 577.041, RSMo, and is not required to prove that the driver was actually intoxicated while driving or that the person did not become intoxicated after driving, in that, the trial court believed all the evidence produced, the evidence showed the driver was drinking while driving and that the arresting officer was aware that the driver had been drinking prior to arrest, and no evidence showed that the driver was drinking after driving.

Though we exercise our discretion not to dismiss this appeal, the deficiencies with this point relied on are numerous and it would be well within our discretion to dismiss this appeal.

First, this point relied on interchangeably argues that the trial court's judgment should be reversed because there is no substantial evidence to support it, it erroneously applies the law, and later in the point, because the judgment is against the weight of the evidence. Given the Director's three separate and distinct challenges to the judgment in its point, it is multifarious. "Generally, multifarious points preserve nothing for appellate review and are ordinarily subject to dismissal." *State v. Brightman*, 388 S.W.3d 192, 196 (Mo. App. W.D. 2012). With regard to not-supported-by-substantial-evidence versus against-the-weight-of-the-evidence challenges, these two evidentiary bases upon which the Director raises in its point have distinct and different analytical frameworks, *Ivie v. Smith*, No. SC93872, 2014 WL 3107448, at *12 (Mo. banc July 8, 2014), which are not appropriate for submission of error in a single point relied on. *Houston v. Crider*, 317 S.W.3d 178, 187 n.9 (Mo. App. S.D. 2010).

Second, arguing that the judgment is not supported by substantial evidence misconstrues the nature of the proceedings before the trial court. In a trial *de novo*, it is the Director who has the burden to adduce evidence. § 302.535.1. The party not having the burden of proof need not offer any evidence. *White*, 321 S.W.3d at 305. So, to criticize the trial court for granting relief to the party without the burden of proof nor the burden of production for the reason that such party received relief without supporting evidence is misplaced criticism of the trial court. Plainly, the trial court is free to disbelieve evidence of the party bearing the burden of proof.

Third, when reviewing the Director's argument section, it is clear that much of its criticism of the trial court is not of the trial court's plain and unambiguous judgment; instead, the Director is attacking gratuitous oral comments made by the trial court at the hearing which are not found in the judgment. Again, the Director misconstrues the procedural posture of this case. Our review is "limited to the written judgment and does not extend to oral comments made by

8

the trial court, which are not part of the judgment." *Harvey v. Dir. of Revenue*, 371 S.W.3d 824, 826 (Mo. App. W.D. 2012). "While an appellate court may consider oral comments made by the trial court to aid in interpreting an ambiguous judgment, [w]here the language of the judgment is plain and unambiguous, we do not look outside the four corners of the judgment for its interpretation." *Id.* (internal quotation omitted). In this case, the trial court made specific and unambiguous written findings of fact and conclusions of law; therefore, we will not consider any gratuitous oral comments made by the trial court during the hearing.

Fourth, the Director's suggestion in its point that "the trial court believed all the evidence produced" belies the language of the judgment in which the trial court made express credibility findings and, upon doing so, conspicuously does *not* refer to any findings of alcohol consumption by Ayler *prior* to the wreck and, instead, references the Trooper's opinions on alcohol consumption in the context of time—that is, the Trooper's conclusions as to his reasonable grounds for believing Ayler was in an intoxicated condition *only* related to Ayler's condition several hours *after* the wreck and not *while Ayler was driving*. Thus, it is a faulty premise for the Director to suggest that the trial court believed all of the evidence produced, or at least in the inferential manner that the Director claims the trial court "agrees with."

The real crux of the Director's argument is that, given the historical facts as found to exist by the trial court, the trial court erroneously applied the law of "probable cause" to the undisputed historical facts. Those historical facts, as found by the trial court to have existed at the time the Trooper made contact with Ayler as much as several hours *after* the wreck, are: the smell of alcohol; watery, bloodshot, and slightly drooping eyes; a flushed face; slurred and mumbled speech; and a refusal to submit to a portable breathalyzer. And, the Director argues that the undisputed evidence establishes that Ayler consumed "at least one beer" prior to the time

9

of the wreck though, as we have previously noted, the trial court's judgment is silent on Ayler's alcohol consumption prior to the wreck.

Even were we to include the Director's claim that Ayler consumed "at least one beer" prior to the wreck, under similar circumstances, our supreme court has held that a trial court is free to draw the conclusion that there was not probable cause to arrest for DWI. In *York v. Director of Revenue*, the uncontroverted indicia of intoxication were the smell of alcohol; watery, bloodshot, and glassy eyes; and an admission to drinking one or two beers. 186 S.W.3d 267, 272 (Mo. banc 2006), *overruled on other grounds by White*, 321 S.W.3d at 301-03.

Similarly, in *Hinnah*, the court acknowledged that the Director had introduced evidence, which if believed by the trial court was sufficient to support a finding of reasonable grounds to believe the driver was driving while intoxicated. 77 S.W.3d at 621. However, the court also found that there was evidence in the record that controverted the Director's evidence of probable cause and supported the trial court's finding that the arresting officer lacked probable cause to arrest Hinnah for DWI:

> The trial court had evidence to support a finding of probable cause, but was free as well to draw the conclusion that there was no probable cause. Either conclusion was sustainable under the record, depending upon the trial court's assessment of the . . . evidence of probable cause as to intoxication.

*Id.* at 622. "[T]he [c]ourt, in finding that there was sufficient evidence for the trial court to conclude that the arresting officer did not have probable cause to arrest [Hinnah] for DWI, relied on competing inferences from the same evidence relied upon by the Director to show probable cause to arrest for DWI." *Flaize*, 182 S.W.3d at 251.

This court defers to the trial court's view of the evidence and does not second-guess the trial court's judgment of contested facts, *White*, 321 S.W.3d at 312-13, including the timing of the arrest. "The trial court was free to believe or disbelieve any or all of the contested evidence

10

and find no probable cause based on its determination and credibility of the Director's evidence." *Holloway v. Dir. of Revenue*, 324 S.W.3d 768, 776 (Mo. App. S.D. 2010). Here, the trial court was not persuaded that the Trooper had reasonable grounds to believe that, *at the time of the accident*, Ayler was driving a motor vehicle while in an intoxicated condition.

The Director relies on several cases,[6] in each of which the appellate court reversed a trial court's finding of no probable cause, to support the Director's assertion that the trial court erred as a matter of law. The Director cited the same cases to the Southern District of this court in *Warren*, 416 S.W.3d at 342. The *Warren* court determined that the cited cases did not provide support for the Director's position because the cases relied on the presumption of the validity of the Director's uncontroverted evidence, which was rejected in *White*, 321 S.W.3d at 307, and did not take into account the trial court's ability to disbelieve the Director's contested evidence. *Warren*, 416 S.W.3d at 342.

The *Warren* court also rejected the Director's attempt to distinguish two cases affirming the trial court's determination that the arresting officer did not have probable cause to believe the defendant was driving a motor vehicle in an intoxicated condition: *Stolle v. Director of Revenue*, 179 S.W.3d 470 (Mo. App. E.D. 2005), and *Domsch v. Director of Revenue*, 767 S.W.2d 121 (Mo. App. W.D. 1989). In *Stolle*, the officer arrived at the defendant's home more than half an hour after the accident. 179 S.W.3d at 472. The officer smelled alcohol when speaking with the defendant. *Id.* The defendant admitted that she had consumed two or three beers; however, the officer did not know when she had done so. *Id.* The Eastern District of our court noted that "[t]he mere fact that a person has consumed alcoholic beverages at some undetermined point in time cannot give rise to probable cause that the person is intoxicated." *Id.* at 472 n.1. In

---

[6] *Ethetton v. Dir. of Revenue*, 182 S.W.3d 260 (Mo. App. S.D. 2006); *Swanberg v. Dir. of Revenue*, 122 S.W.3d 87 (Mo. App. S.D. 2003); *Simmons v. Dir. of Revenue*, 3 S.W.3d 897 (Mo. App. S.D. 1999); *Cain v. Dir. of Revenue*, 896 S.W.2d 724 (Mo. App. E.D. 1995); *Howard v. McNeill*, 716 S.W.2d 912 (Mo. App. E.D. 1986).

*Domsch*, the arresting officer located the defendant at a restaurant an hour and forty minutes after the accident occurred. 767 S.W.2d at 122. The officer observed that the defendant had eaten a meal and that there were no alcoholic beverages in his presence, but the defendant had a strong odor of alcohol on his breath, was unsteady on his feet, and was staggering. *Id.* The officer arrested the defendant. *Id.* This court affirmed the trial court's determination that the Director had failed to meet his burden to prove that the arresting officer had probable cause to believe that an alcohol-related offense had occurred because "there was no evidence that the [defendant] was intoxicated at the accident some one hour and forty minutes earlier." *Id.* at 124.

The same is true here. Depending upon the trial court's assessment of the contested evidence of probable cause as to intoxication *at the time of the accident*, either a conclusion that probable cause existed or was lacking was sustainable under the record. We cannot say as a matter of law that the trial court clearly erred in finding that the Trooper did not have reasonable grounds to believe Ayler was driving a motor vehicle while in an intoxicated condition.

Point denied.

## Conclusion

The trial court's judgment is affirmed.

Mark D. Pfeiffer, Presiding Judge

Gary D. Witt, Judge, and Zel M. Fischer, Special Judge, concur.